**RESOLUTION TRUST CORPORATION,**
in its corporate capacity, Plaintiff,

v.

Cecil **CONNER,** A.N. **Harley, Jr., Fallis A. Beall, Charles W. Hill, John E. Campbell, Robert J. Weedn, G.H. Stout, Jr., Janet Casselberry** and **Karla Griffin,** Defendants.

No. Civ–92–506–R.

United States District Court,
W.D. Oklahoma.

March 24, 1993.

Gene C. Buzzard, Gable & Gotwals, Tulsa, OK, for plaintiff.

Henry C. Bonney, David L. Benefield, John E. Campbell, Jr., Bonney Weaver Corley Benefield & Gossett, Duncan, OK, for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before this Court is the motion of Plaintiff Resolution Trust Corporation, in its corporate capacity ("RTC"), to strike Defendants' affirmative defenses for lack of subject matter jurisdiction. This motion was filed on August 26, 1992, just two days after this Court entered an Order denying a prior motion to strike affirmative defenses, on other grounds, filed by the RTC. This motion was filed shortly before this case was transferred to another judge on September 9, 1992. On March 11, 1993, that judge recused himself and the case was transferred back to the undersigned judge, who will now rule on the motion to strike.

The RTC's assertion that this Court is without subject matter jurisdiction over Defendants' affirmative defenses of mitigation of damages, contributory and comparative negligence, set-off, waiver, estoppel, laches, payment and release is predicated upon 12 U.S.C. § 1821(d)(13)(D); *Federal Savings and Loan Insurance Corporation v. Shelton*, 789 F.Supp. 1367 (M.D.La.1992); and *Federal Savings and Loan Insurance Corporation v. McGinnis Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263 (E.D.La. 1992).[1]

Defendants in response assert that affirmative defenses are not "claims" as that term is used in 12 U.S.C. § 1821(d)(13)(D); that none of the affirmative defenses raised by Defendants could be the basis for an independent action against the RTC but in fact did not even arise until the RTC brought this action against the Defendants; that Plaintiff's construction of Section 1821(d)(13)(D) would yield an absurd and unjust result; and that the affirmative defenses asserted herein, in contrast to those asserted in *FSLIC v. Shelton* and *FSLIC v. McGinnis, et al.*, if proved, would not decrease the assets of the receivership estate of Duncan Savings and Loan Association ("DSLA") but in fact, because the RTC in its corporate capacity purchased the claims herein from the FSLIC as receiver for

---

**1.** In addition to the cases cited and relied upon by RTC, the Court observes that virtually every court which has considered the issue of whether 12 U.S.C. § 1821(d)(13)(D) is applicable to and divests courts of subject matter jurisdiction over affirmative defenses asserted against the RTC have held that that section does apply to such affirmative defenses and divests courts of jurisdiction thereof until exhaustion of the administrative remedy provided by the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"). *See Resolution Trust Corp. v. Youngblood*, 807 F.Supp. 765, 768–69, 770–71 (N.D.Ga.1992) ("affirmative defenses" of indemnification and set-off stricken; court was without jurisdiction to hear issues of indemnification or set-off, regardless of whether couched as counterclaims or affirmative defenses); *Talmo v. Federal Deposit Insurance Corp.*, 782 F.Supp. 1538, 1542 (S.D.Fla.1991) ("failure of consideration defense constitutes an action seeking a determination of rights to the assets of" the failed bank relating to an act or omission of the failed bank because it seeks to eliminate or reduce counter-defendants' debt); *Federal Deposit Insurance Corp. v. Updike Brothers, Inc.*, 814 F.Supp. 1035 (D.Wyo.1993); *Resolution Trust Corporation v. Love*, No. 92–CV–1018–J, slip op. (D.Wyo. November 25, 1992) (unpublished) (1992 WL 455432) ("affirmative defenses asserted by defendants seek a determination of rights with respect to assets of a depository institution" and therefore the court lacks jurisdiction over them). *Resolution Trust Co. v. Scaletty*, 810 F.Supp. 1505 (D.Kan.1992) (mitigation of damages defense stricken, following *McGinnis* in part); *Federal Deposit Insurance Corp. v. Milton L. Coulter Trust*, No. 91–CV–1047–J, slip op. (D.Wyo. September 22, 1992) (unpublished) (1992 WL 455433) (court without subject matter jurisdiction over mitigation of damages and offset asserted by way of affirmative defenses because they "will affect the assets of the receivership"). *But Cf. Resolution Trust Corp. v. Ryan*, 801 F.Supp. 1545, 1555 (S.D.Miss.1992) (holding that dismissal of counterclaims which are strictly defensive in nature and do not seek any monetary or affirmative relief of any kind is not mandated by § 1821(d)(13)(D) but that the counterclaims were not proper declaratory judgment claims because they simply sought an adjudication that defendants did not violate their duties as bank officers and directors); *Federal Deposit Insurance Corp. v. Vernon Real Estate Investments, Ltd.*, 798 F.Supp. 1009 (S.D.N.Y.1992) (counterclaims but not affirmative defenses dismissed for lack of jurisdiction, where issue of jurisdiction over affirmative defenses was apparently not raised).

DSLA, will have no effect on the assets of DSLA. Defendants further assert that they are not seeking a determination of rights with respect to assets of a depository institution for which RTC has been appointed receiver because Defendants do not dispute that upon appointment as receiver for DSLA, the RTC had rights to all of DSLA's assets including the right to sue upon them nor do they dispute the rights of the RTC in its corporate capacity as purchaser of the assets herein to sue upon them. As an alternative, independent argument, Defendants assert that 12 U.S.C. § 1821(d)(13)(D) does not apply even to *claims* asserted against the RTC in its corporate capacity as distinguished from its capacity as receiver, *citing Rosa v. Resolution Trust Corporation,* 938 F.2d 383 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

■ "The starting point for interpretation of a statute 'is the language of the statute itself.' " *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842, 852 (1990) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). A statute must be read as "mandated by the grammatical structure of the statute." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989). If the language of a statute is clear and unambiguous, then the Court's inquiry ends and the plain meaning of the language is conclusive except in the rare instance where "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," *see id.,* 489 U.S. at 241–42, 109 S.Ct. at 1031, 103 L.Ed.2d at 298–99, or where a plain meaning interpretation would lead to "patently absurd consequences." *United States v. Brown,* 333 U.S. 18, 27, 68 S.Ct. 376, 381, 92 L.Ed. 442, 449 (1948).

■ The statute in question states as follows:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver. 12 U.S.C. § 1821(d)(13)(D).

The statute is clear and unambiguous. Therefore, it must be interpreted according to its plain meaning. The word "claim," used as a noun as it is in the relevant statute, ordinarily means a "cause of action." *See Black's Law Dictionary* (5th Ed.1979) at p. 224. The word "action" "in its usual legal sense means a suit brought in a court" or "a formal complaint within the jurisdiction of a court of law." *Id.* at p. 26. There can be no doubt that Congress employed the terms "claim" and "action" in their ordinary legal sense inasmuch as Section 1821(d)(13)(D) expressly withdraws from courts jurisdiction over matters over which they would otherwise have jurisdiction. Affirmative defenses do not seek payment nor are they "claims" or "actions," i.e. causes of action. Nor is an affirmative defense an "action seeking a determination of rights." 12 U.S.C. § 1821(d)(13)(D)(i). An affirmative defense may be asserted *in* an action and an affirmative defense may seek or require a determination of rights but it is not an *"action seeking a determination of rights."* 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added). Had Congress intended to remove from the courts jurisdiction over all actions *in which* a determination of rights in receivership assets is sought or merely to remove from courts jurisdiction over defenses requiring a determination of rights in receivership assets, it would have been a simple matter to do so. Similarly, had Congress intended to remove from the jurisdiction of the courts any and all actions, claims or defenses which might diminish the assets of any depository institution for which the Corporation has been appointed receiver or diminish or defeat any claims of the Corporation in any capacity, it would been simple to so provide.

In interpreting the language of Section 1821(d)(13)(D), however, the Court also looks

to the provisions of the whole law, and to its object and policy. *Aulston v. United States,* 915 F.2d 584, 589 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991), *citing Dole v. United Steelworkers,* 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23, 33 (1990). *See Federal Deposit Insurance Corporation v. Canfield,* 967 F.2d 443, 446 (10th Cir.1992) (*en banc*), *citing* 2A N. Singer, *Sutherland Statutory Construction* § 46.05 (5th ed. 1992) ("It is a general rule of construction that the statute should be read as a whole."). Section 1821(d) prescribes an administrative claims process to enable the FDIC and RTC to "dispose of the bulk of claims against failed financial institutions expeditiously and fairly." *Praxis Properties, Inc. v. Colonial Savings Bank,* 947 F.2d 49, 64 (3rd Cir.1991) *quoting* H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 1 at 419, *reprinted in* 1989 U.S.Code Cong. & Ad.News 86, 214–15. The Corporation as receiver is required to publish a "notice to the depository institution's creditors to present their claims, together with proof" to the receiver by the published deadline, which may not be less than 90 days from the date of publication, 12 U.S.C. § 1821(d)(3)(B), and to mail a similar notice to any creditor shown on the institution's books. 12 U.S.C. § 1821(d)(3)(C). The RTC as receiver is required to determine whether to allow or disallow claims within a certain time frame and to notify the claimants of its determinations. *See* 12 U.S.C. § 1821(d)(5)(A). The receiver may allow any claims received before the published deadline which are proved to its satisfaction, 12 U.S.C. § 1821(d)(5)(B), and "may disallow any portion of any claim by a creditor or claim of security, preference or

priority which is not proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(D). No court may review the RTC's disallowance of a claim, 12 U.S.C. § 1821(d)(5)(E), but if the RTC denies a claim or fails to render a decision within the allotted 180–day period, then the claimant may within 60 days either request an administrative review of the claim; file suit on the claim in the district court for the District of Columbia or in the district court in the district where the failed depository institution's principal place of business is located; or continue a judicial action commenced prior to the appointment of the receiver. 12 U.S.C. § 1821(d)(6)(A). The statute provides that the filing of a claim with the receiver shall for purposes of any applicable statute of limitations, "constitute a commencement of an action." 12 U.S.C. § 1821(d)(5)(F)(i); 12 U.S.C. § 1821(d)(8)(E)(i). "It is obvious that these provisions operate in tandem with other provisions which provide for the stay of judicial actions, 12 U.S.C. § 1821(d)(12), and with the provision in question which deprives courts of jurisdiction over claims and actions, the latter expressly limit[ing] a claimant's ability to circumvent the . . . administrative claims procedure." *Praxis Properties, Inc. v. Colonial Savings Bank,* 947 F.2d at 63. This Court's review of the provisions in Section 1821(d) governing the administrative claims process and the apparent relationship between that procedure and the divestiture of jurisdiction in Section 1821(d)(13)(D) [2] enriches and reinforces this Court's understanding of the terms "claim" and "action" as used in Section 1821(d)(13)(D). Although "claim" and "action" are not defined in Sec-

---

**2.** The Circuit Courts of Appeals are in unanimous agreement that Section 1821(d)(13)(D) establishes a statutory exhaustion requirement. *See Marquis v. Federal Deposit Insurance Corp.,* 965 F.2d 1148, 1151 (1st Cir.1992); *Office & Professional Employees International Union, Local 2 v. Federal Deposit Insurance Corp.,* 962 F.2d 63, 64–5 (D.C.Cir.1992); *Meliezer v. Resolution Trust Corp.,* 952 F.2d 879, 882 (5th Cir.1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required"); *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2nd Cir.1991); *Praxis Properties, Inc. v. Colonial Savings Bank,* 947

F.2d 49, 63 (3rd Cir.1991); *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991) (*per curiam*); *Federal Deposit Insurance Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3rd Cir.1991) (in enacting FIRREA, "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that is made outside the procedure set forth in section 1821"); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 391 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, 455 (E.D.N.Y.1990) *aff'd,* 931 F.2d 7 (2nd Cir.1991) (*per curiam*).

tion 1821(d) or elsewhere in FIRREA, Section 1821(d) does make reference to *creditors* of the depository institution, claims by creditors and claims of security, preference or priority. *See* 12 U.S.C. § 1821(d)(3)(B) & (C); 12 U.S.C. § 1821(d)(5)(D). Nowhere is the term "defense" or "potential defense" used. Indeed, the usage of the terms "claim" and "action" in other provisions of Section 1821(d) negates any inference that those terms as used therein include and encompass "defenses." The receiver is not required to publish or mail any notices for presentment of claims except to *creditors* of the depository institution. 12 U.S.C. § 1821(d)(3)(B) & (C).

■ The interpretation of Section 1821(d)(13)(D) urged by the RTC and adopted by the courts in *FSLIC v. Shelton,* 789 F.Supp. 1367, and *FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.,* 808 F.Supp. 1263, would require parties such as Defendants who are not creditors of a failed depository institution and do not receive statutory notice of the requirement of and deadline for filing claims, who have no independent basis for bringing an action against the RTC and against whom the RTC has not brought suit, to present to the RTC as receiver any potential defenses that they might have to any claims that the RTC as receiver or in its corporate capacity might one day assert against them, which are as yet unknown, and proof thereof. In summary, the rest of subsection d of Section 1821 gives the Court no reason to think that Section 1821(d)(13)(D) does not mean what it says. *Compare with Federal Deposit Insurance Corporation v. Canfield,* 967 F.2d at 446–47. In fact, it so underscores what the Court finds is the plain meaning of § 1821(d)(13)(D) that if § 1821(d)(13)(D) were determined to be ambiguous, reference to the statute as a whole would nevertheless compel the conclusion that "claim" and "action" as used therein do not encompass affirmative defenses. Finally, the Court's consideration of subsection d of Section 1821 in its entirety leads the Court to conclude that even if the plain language of § 1821(d)(13)(D) were read or understood to include affirmative defenses, an exception to the plain meaning rule of statutory construction would apply because such a literal application of the statute would produce a result demonstrably at odds with the intention of the drafters evidenced in the remainder of Section 1821(d), *see, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031, 103 L.Ed.2d at 299, and would lead to the "patently absurd consequence" of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC. *See, e.g., United States v. Brown,* 333 U.S. at 27, 68 S.Ct. at 381, 92 L.Ed. at 449.

In light of the foregoing, the Court finds it unnecessary to reach the issue of whether, if Defendants' affirmative defenses were treated as claims, the jurisdictional bar of Section 1821(d)(13)(D) would be inapplicable because such claims would be against the RTC in its corporate capacity rather than against the RTC as receiver.

The motion of the Resolution Trust Corporation in its corporate capacity to strike Defendants' affirmative defenses for lack of subject matter jurisdiction is DENIED.

**IT IS SO ORDERED.**